## THE PEOPLE *v.* GARCÍA.

### APPEAL from the District Court of Mayagüez.

No 21.—Decided June 22, 1904.

APPEAL—MANIFEST ERROR IN RECORD.—No error whatever appearing in the record which would justify the reversal of the judgment appealed from, the same must be affirmed.

The facts are stated in the opinion.
*Mr. del Toro, Fiscal,* for respondent.
The appellant did not appear.
MR. JUSTICE MACLEARY delivered the opinion of the court.
The appellant in this case was tried before the District

Court of Mayagüez for the offense of extortion. The accusation presented by the *fiscal* against him reads as follows:

"The said Juan Bautista García, on a certain day in the month of April of the present year 1903, when he discharged the duties of tax collector of the municipality of Añasco, presented himself at the house of Don Pedro Ruíz Carrero, resident in the *barrio* of Calvache, and the town of Rincón, which forms a part of the judicial district, making the said Don Pedro Ruíz Carrero believe by falsifying the truth, that he was indebted in the sum of $5.95 to the municipality of Añasco for back taxes, and demanded of him the payment of said amount, threatening him with an attachment of his property if he did not comply; obtaining from Ruíz $4 through the said threat, giving him a receipt written in pencil, in which he made it appear that he had received the sum of $5.95 in payment of taxes, to the Treasury. This act is contrary to the law in such cases provided, and against the peace and dignity of the People of Porto Rico."

The accusation was presented on the 9th of June, 1903, The defendant was arraigned on the 15th day of the same month and pleaded not guilty and demanded a trial by jury, choosing as his attorney Don Pascasio Fajardo. The court not considering sufficient the bond of $200 offered by the accused, raised it to $500, for which reason he remained a prisoner.

On the 8th of October the case was called for trial, and the defendant waived a jury; and on the 15th day of April, 1904, the case was called for trial, having been continued from time to time previous thereto. All of the witnesses were present and were sworn. Don Pedro Ruíz Carrero testified that he was a resident of the *barrio* of Calvache, in Rincón, and that the accused was in his house collecting taxes, which he did not believe he owed; the accused telling him that he owed $5.95, and he answered that he did not have any money; and then García proposed to make him a trade—that he should give him $4, and he would give him a receipt in full for the $5.95; that he borrowed the money and delivered the same to García,

who gave him a receipt in pencil, and afterwards before the corporal of the police, Quiñones, he tried to make García give him back the receipt. To questions put by counsel for the defense he answered that he made the trade with García in the presence of a son of the witness; that it was about 1 o'clock of the day mentioned, and he delivered him the $4 in silver, which act occurred in the parlor of his house. Answering to the court he said that when the accused required him to pay, saying that they were back taxes, he answered to the person speaking that it could not be, for he had already paid. Andres Rubio Rosado said that he saw the accused in the house with Carrero, his father, and that he told him that he would give him a receipt for $5.95 if he would give him $4; that his father delivered the money to him and that then García wrote a receipt in pencil for $5.95, telling him that afterwards he would deliver him the receipt written on the proper blank form. The witness recognized the receipt presented by the *fiscal*, saying that it was the same receipt delivered to his father by García. To questions put by the defense he said that it looked like the receipt, as the amount of $5.95 was stipulated in it, which the said García tried to collect from his father; that his father delivered to García $4 in his presence in the parlor of the house on the morning of the day above mentioned. Fernando Quiñones, corporal of the Insular Police, testified that he performed his services in the town of Rincón in April of last year, and he gave an account of what has been detailed by Andrés Carrero in this proceeding. That after denouncing the accused in the following week the former offered him, before the guardsman, Mendoza, in the police headquarters, to return the money to Carrero, if he would accompany him to his presence; and on being cross-examined, he said that all he had declared and knew was what Ruíz had told him. And on cross-examination by the *fiscal* he said that the week following his appearance in the *fiscal's* office

the accused made him the proposition of which he had given an account.

Then the testimony of the defense was introduced. Isaac Figueroa, having been previously sworn, testified that he was employed by the municipal court of Añasco and that he went where Carrero was, on behalf of García, in April of last year, in order that he might come to the *alcaldía* of the said town to arrange a charge which they were getting out against him in the Treasury for taxes. Plácido Polanco testified that in April of the past year, not remembering the exact date, he received a letter from Don Juan Bautista García requesting him to tell Don Pedro Ruíz that he should come to the *alcaldía* of Añasco and arrange a difference of taxes. At this stage of the trial the lawyer offered in evidence the letter to which the witness refers, and there being no opposition made to it by the *fiscal,* the court admitted it, and it was identified by the witness as the same which he had received. Ricardo Cumpiano declared that in the month of April of last year he was in Añasco, and being at the municipal treasury he heard the accused say that he spoke with the treasurer about a difference in taxes which Carrero owed; and as there was no agreement between them García told the treasurer that he would write to Carrero on the subject; and, answering the presiding judge, said that there was an estate in Rincón called Ruíz. The accused testified under oath that in the month of April, 1903, he was tax collector in the municipality of Añasco; he established himself in Rincón, and appearing in the house of Don Pedro Ruíz, he required him to pay the taxes, and that he asked him how much it amounted to, and he answered him that it was $5.95; that as Ruíz did not have any money he went to the house of a certain Cajigas, who let him have the amount, which was delivered to the accused by Ruíz; that he went to the depository in Añasco in order to find out who the debtors Ruíz were, and the treasurer told him that he should return to Rincón, but as he was sick he wrote to Polanco to

advise Ruiz; and that in two or three days Corporal Quiñones came and denounced him. He denied absolutely the facts shown by the witnesses, Ruíz and Quiñones. To the questions of the presiding judge he said that the succession of Ruíz was composed of Domingo, Sixto, Ramón, and Andrés, who were debtors. That he collected from Don Pedro because it was the first house to which he went, and that he deposited the amount collected with the justice of the peace court of Añasco, after having been denounced. And answering the *fiscal* he said that on the 14th of April he presented himself at the house of Carrero for the purpose of collecting the taxes and that in thirteen, fourteen, or fifteen days he was denounced by Corporal Quiñones; that he ceased to hold his office in the month of May, to the best of his recollection; and that as the *fiscal* refreshed his memory he says that perhaps it was on the 24th of April that he collected the taxes from Ruíz, as representative of the Ruíz Succession, which was undivided. Notwithstanding this, he asked Don Pedro where his sons were, and that he did not give bond as collector of taxes. The judgment of the District Court reads as follows:

"Judgment.—In this case prosecuted against Juan Bautista García Ríos, by virtue of an accusation or an information presented by the *fiscal* for the offense of extortion, the following facts were found to be proven on the trial: That the accused, in the month of April of last year, the exact date not appearing, pretending to have the right as a public official, in virtue of being tax-collector of the *Ayuntamiento* de Añasco, presented himself in the house of Pedro Ruíz Carrero, in the *barrio* of Calvache, in the town of Rincón, and collected the sum of $5.95 for taxes due, as it appears by individuals named Andrés Domingo, Sixto and Ramón Ruíz; Ruíz having delivered to him the sum of $4 which he tried to return some days later, after the filing of the criminal complaint. The court unanimously condemns the accused to the punishment of $100 fine, or one hundred days in jail, which he shall suffer in this city, and to pay the costs. Mayagüez, 23d of April, 1904. (Signed) Arturo Aponte, J. A. Erwin, Enrique González Darder.

"Pascasio Fajardo, lawyer for Juan Bautista García in the case

prosecuted against him for extortion, appears before the court and says:

"My client having been condemned to the punishment of $100 fine or one hundred days in jail, and costs, whereby my client is aggrieved, I hereby give notice of appeal, and pray the court to fix the bond therefor. The court will please to consider this application and fix the bond, in order that my client may remain at liberty during the pendency of the appeal. Mayagüez, 23d of April, 1904."

On the same day the court made this order:

"The foregoing writing being presented, the court allows the appeal taken by the accused, Juan Bautista García Ríos, through the intervention of his lawyer, provided that said García shall give a bond in the sum of $200, to be approved by the secretary according to article 356 of the Code of Criminal Procedure, the appellant being required to deposit $10 to cover costs in the Supreme Court."

On the 10th of May, 1904, receipt of the record was acknowledged by the Supreme Court. On the 30th of May, 1904, the record was sent to the *fiscal* for ten days. On the 3d of June, 1904, the *fiscal* made the following report:

"This is an appeal from the judgment of the District Court of Mayagüez in a case of extortion. The *fiscal* of the district court formulated the information, which was sworn to on the 9th of June, 1903; on the 15th of June the act of arraignment took place, and the accused pleaded not guilty and asked for a trial by jury; later the attorney for the accused, in his name, withdrew his application for a jury, and on October 10th the accused himself appeared and ratified the action of his attorney.

"On the 15th of April, 1904, the oral trial was had in making up the record of which there appears a brief statement of the evidence taken, and on the 23d of the month of April the court pronounced sentence, condemning the accused to the punishment of $100 fine, or one hundred days in jail, and to pay the costs. From this sentence the appeal was taken, but there is no bill of exceptions, nor have any allegations been made before this Supreme Court."

"*Points of Law.*—Article 456 of the Penal Code, and 345 and following of the Code of Criminal Procedure.

"*Opinion of the Fiscal.*—There is no bill of exceptions, nor does

any protest appear in the record of the trial. Counsel simply confined himself to taking the appeal. This being the case, it is clear that the real question has not been presented.

"Notwithstanding this, from an examination of the transcript of the record, we are of the opinion that there has been no error committed by the court which would warrant the reversal of the judgment rendered, and on that account we oppose the appeal.

"*The decision which ought to be rendered.*—This appeal should be dismissed at the cost of the appellant."

On 6th of June, 1904, the proceedings having been completed, the case was set down for trial on the 8th of this month at 9 o'clock in the morning. On the 8th of June, the members of the court being present, the trial took place, with the attendance of the *fiscal,* who made an argument opposing the appeal, after which the trial was declared closed.

On reviewing this entire record, there is nothing whatever appearing which could justify an appeal or the reversal of the judgment. The guilt of defendant is evident, and his punishment very light. Some means should be provided to prevent frivolous appeals like this which have no other effect than to waste time and delay the punishment of guilty parties. The appeal is clearly taken merely for delay. The judgment should be affirmed, with costs against the appellant.

*Affirmed.*

Chief Justice Quiñones and Justices Hernández and Figueras concurred.

Mr. Justice Sulzbacher did not sit at the hearing in this case.